**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-4061
_____

FREDY ALBERTO JIMENEZ RAMIREZ,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A073-721-259)
Immigration Judge:  Honorable Leo Finston
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 11, 2016

Before: CHAGARES, KRAUSE and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: December 20, 2016)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Fredy Alberto Jimenez Ramirez, proceeding pro se, petitions for review of an order of the Board of Immigration Appeals ("BIA") dismissing his appeal of a decision of an Immigration Judge denying his application for relief from removal. For the reasons that follow, we will deny the petition for review.[1]

Ramirez, a 26-year old native and citizen of Guatemala, entered the United States in 1992 without inspection with his mother. Ramirez's father came to the United States separately. In 1997, an Immigration Judge found Ramirez and his mother deportable and granted them voluntary departure, but they did not leave the country. In 2009, Ramirez, at the age of 19, violated the law and was removed to Guatemala based on the prior deportation order. He illegally reentered the United States in 2010. Ramirez violated the law again and his deportation order was reinstated in 2013. Ramirez expressed a fear of harm in Guatemala and his case was referred to an Immigration Judge ("IJ"). Ramirez was not eligible for asylum, but he applied for withholding of removal and relief under the Convention Against Torture.

Ramirez, then represented by counsel, testified before the IJ that when he was deported in 2009, a taxi driver agreed to help him call his family in the United States. The driver asked Ramirez about his tattoos and whether he was in a gang. Ramirez told him that his tattoos were not gang-related. The driver took Ramirez to a location where men forced him out of the car and struck him with a gun. A man brought him into a

---

[1]Ramirez was referred to as Fredy Jimenez in his administrative proceedings. He has used the name Fredy Alberto Jimenez Ramirez in his filings in this Court.

house, told him to strip down, and accused him and his family of belonging to a gang. Ramirez said that the men hit him and told him that they wanted money.

Ramirez gave the men his father's telephone number and they demanded a $10,000 ransom. Days later, the men placed him in the trunk of a car and told him they were taking him to his father. When the trunk opened, Ramirez got out and ran. He did not go to the police because the men had threatened to find him if he did. The men, who Ramirez believed were gang members, also told him that they had connections to the police. Ramirez got a ride to the Mexican border. He lived on the streets in Mexico for several months until someone helped smuggle him into the United States.

Ramirez's father testified that the kidnappers called him for the ransom and told him that they would kill Ramirez if he spoke to authorities. Ramirez's father stated that he went to Guatemala and that men dressed in airport security uniforms met him at the airport. He took a bus to another location where policemen met him and took him to a house. A man came for the money, threatened him with a gun, and told him that Ramirez had run away. He did not see Ramirez when he was in Guatemala.[2]

The IJ assumed that Ramirez was credible and denied withholding of removal because Ramirez did not establish that he faces mistreatment or that he was mistreated on

---

[2]Dr. Jacqueline Moyerman, a psychologist, also testified. She stated that she examined Ramirez when he was detained and that he was, among other things, distraught and depressed. In light of this testimony, the IJ made a finding that Ramirez was competent.

account of a protected ground.[3] The IJ stated that Ramirez did not articulate the basis of his persecution claim, but he hypothesized that Ramirez claimed that he would be persecuted on account of his membership in a particular social group of "Americanized deportees who are wrongly identified as gang members." IJ's Decision at 8. The IJ ruled that such a group does not constitute a "particular social group," that Ramirez was not singled out because of these characteristics, and that he was a victim of crime.

The IJ denied relief under the Convention Against Torture because Ramirez did not show that his mistreatment was perpetrated by or with the acquiescence of a public official. The IJ noted that some of the persons involved were dressed in official clothing, but stated that neither Ramirez nor his father determined if there was a connection between the kidnappers and a Guatemalan government official. The IJ also did not find it more likely than not that Ramirez would be tortured by or with the acquiescence of a public official if removed. The IJ noted that, unlike when he was removed in 2009, Ramirez would not necessarily arrive in Guatemala without any assistance.

The BIA affirmed the IJ's decision. With respect to the withholding of removal claim, the BIA stated that Ramirez had not shown that a protected ground was a central reason for the claimed persecution. The BIA noted that he had not meaningfully discussed any of the protected grounds on appeal or challenged the IJ's decision in this

---

[3]See Gonzalez-Posadas v. Att'y Gen., 781 F.3d 677, 684 (3d Cir. 2015) (an alien seeking withholding of removal must show that he will more likely than not be persecuted on account of his race, religion, nationality, membership in a particular social group, or political opinion).

regard. The BIA also concluded, for reasons similar to those given by the IJ, that Ramirez had not shown that it is more likely than not that he will be tortured by or with the acquiescence of a public official. This petition for review followed.

We have jurisdiction to review the final order of the BIA pursuant to 8 U.S.C. § 1252. Gonzalez-Posadas, 781 F.3d at 684 n.5. Ramirez asserts that we should review the IJ's decision because the BIA adopted that decision. The BIA, however, did not state that it adopted the IJ's decision. Rather, the BIA affirmed and reiterated certain determinations of the IJ in its decision. We review those determinations of the IJ along with the BIA's decision. Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009).

Read liberally, Ramirez's pro se brief appears to argue that he should have been granted withholding of removal because he established that he was persecuted by gang members affiliated with the police on account of his perceived gang membership. Ramirez contends that in light of his past persecution, his future persecution is presumed. Ramirez, however, did not argue in his brief on appeal to the BIA that he was persecuted on account of his perceived gang membership. Through counsel, Ramirez argued only that the extreme mistreatment he suffered when he was removed in 2009 established a clear probability that his life or freedom would be threatened if removed again. As noted above, the BIA stated in its decision that Ramirez had not meaningfully discussed any of the protected grounds on appeal.

Ramirez now asserts that he was persecuted on account of his perceived gang membership, but we agree with the Government that we lack jurisdiction to consider this

5

issue because he did not raise it before the BIA. <u>Lin v. Att'y Gen.</u>, 543 F.3d 114, 119-21 (3d Cir. 2008). Although we have jurisdiction to consider issues addressed by the BIA sua sponte, <u>id.</u> at 123-24, even if the BIA's decision can be construed as affirming the IJ's ruling that "Americanized deportees who are wrongly identified as gang members" does not constitute a particular social group, Ramirez does not challenge this legal conclusion.

Ramirez also argues in his brief that the BIA failed to consider all of the evidence presented in support of his appeal. Although Ramirez does not identify the evidence he contends the BIA did not consider, the BIA stated in its decision that Ramirez had presented documents on appeal, that it does not consider evidence in the first instance, and that it would not remand the matter to the IJ to consider the evidence because Ramirez had not shown that it would affect the outcome. To the extent Ramirez is referring to these documents, he has not shown any error by the BIA. The documents include new affidavits that primarily appear to corroborate evidence of his kidnapping.

Ramirez also states that the IJ did not "articulate adequately" why he did not meet his burden of proof for relief under the Convention Against Torture. Pet. Brief at 9. To the extent this statement also may be construed as directed to the BIA, the BIA gave several reasons why Ramirez did not meet his burden of proof. Ramirez has not explained why these reasons are inadequate or otherwise addressed this claim for relief. Absent any discussion of this claim, we do not consider it. <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 182 (3d Cir. 1993).

6

Accordingly, we will deny the petition for review.